THE STATE OF OHIO, APPELLEE, *v.*
WAGNER, APPELLANT.

(No. 50010—Decided
February 18, 1986.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Richard C. Taricska,* for appellant.

KRUPANSKY, J. Appellant was indicted on two counts of rape, R.C. 2907.02. Each count specified (1) the use of force, and (2) that the victim was under thirteen years of age. He was also indicted on one count of gross sexual imposition, R.C. 2907.05, with the specification the victim was under thirteen years of age. After a jury trial appellant was found guilty on all three counts. He was sentenced to two concurrent life sentences on the rape counts and a two-year sentence on the gross sexual imposition, sentences to run consecutively.

This appeal challenges the trial court's decision to admit the hearsay statements of a three-year-old male victim of sexual abuse ruled incompetent to testify. The issue necessarily involves the concomitant issue of the appellant's constitutional right to confront those who testify against him. For the reasons discussed below, the decision of the trial court is affirmed.

Apart from the statements of the boy presented to the jury by his mother and a police detective, the only other pertinent prosecution testimony was that of the examining pediatrician. The doctor opined within reasonable medical certainty that the child had suffered trauma to his anal area consistent with sexual abuse. Thus, the validity of appellant's conviction rests upon the determination of the admissibility of the child's statements identifying the perpetrator and precise manner of the acts performed upon him. A brief summary of the relevant factual details follows.

The victim, William Priest, resided with his mother, his younger sister, Kelly, age two, and the mother's fiance. Appellant is the fiance's brother. On August 30, 1984, William Priest's family celebrated his third birthday. At approximately 9:30 p.m., William's mother put him and his sister to bed. The mother and her fiance retired at approximately 11:30 p.m. At that time, the appellant was in the living room watching television; he had decided to spend the night at the house and sleep on the living room couch due to a heavy rainstorm. There is

some controversy whether appellant's nephew, Kevin Wagner, was present in the house for any prolonged period of time or whether he merely stopped by on his way to the separate and distinct upstairs living quarters occupied by Wagner's girlfriend.

According to William Priest's mother, the following morning William arose at his usual time of approximately 7:00 a.m., turned on the television and began watching. At approximately 9:00 a.m., his mother awakened and served him and his sister bowls of cereal in front of the television. The two children remained in front of the television until approximately noon when they requested to play on the porch. At approximately 1:30 p.m., their mother summoned them for lunch. After lunch, William Priest returned to the television set while his mother bathed the younger sister.

After the younger child was bathed, it was William's turn. After placing him in the bath, William's mother attempted to cleanse the boy's backside when William slapped her hand away saying his "bootie"[1] hurt. When she asked him why, he dropped his head, and he began mumbling and playing with his fingers. After repeated questions, each phrased differently in an attempt to elicit a response, William finally said in a low voice, "Will[2] put me in Kel's bed and he eat me. He eat me up and bite me on my bootie." Upon questioning as to the location of the biting, William pointed to his penis and his rectum. His mother examined his rectum and observed it was swollen and red. She immediately took him to University Hospital where he was examined by the doctor who later testified to the probability of sexual abuse.

On September 5, 1985, William met with a Cleveland Police Department detective, Janice Abernathy, trained to investigate cases of juvenile sexual abuse. Employing the usual police procedure in dealing with children as young as William, the detective attempted to elicit details of the sexual acts through the medium of anatomically correct dolls. The detective testified as follows:

"A. The child took the small male doll, looked him over, took his shirt off, then pulled his pants completely off. And he placed the child, the smaller doll, State's Exhibit Number 4, face down.

"He took the shirt and he unsnaped [sic] the zipper open. And he took the pants and he opened the pants like this. He took the penis of the adult doll, put it in the anal part of the small child. And the child did like this (indicating).

"Then the victim took the smaller doll turned him on his back. He placed the adult male doll's mouth on the penis of the small child. Turned the doll over again and then put the mouth of the male down on the buttock area like this."

There is no question William's demonstration with the dolls constitutes nonverbal conduct intended as an assertion to qualify the actions as a statement susceptible to an analysis utilizing the Rules of Evidence concerning hearsay. Evid. R. 801(A)(2).[3]

The initial issue to be resolved is whether or not William's statements to his mother and the detective are admissible hearsay. Appellant contends as follows:

"The trial court committed reversible error when it permitted the hearsay of William Priest into evidence."

The trial court determined both statements qualified as excited ut-

---

[1] The victim's terminology for buttocks.

[2] "Will" is a nickname of the appellant.

[3] Evid. R. 801(A)(2) states in part:

"* * * A 'statement' is * * * nonverbal conduct of a person, if it is intended by him as an assertion."

terances[4] and thus were admissible as exceptions to the general prohibition against hearsay. A review of the decisions of the courts of Ohio and other jurisdictions demonstrates the correctness of the trial court's ruling.

The leading Ohio case on the question of excited utterances relating to abusive sex acts performed on minor children is State v. Duncan (1978), 53 Ohio St. 2d 215, 7 O.O. 3d 380, 373 N.E. 2d 1234, wherein the court stated:

"* * * [A]n appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event." Id. at 219, 7 O.O. 3d at 383, 373 N.E. 2d at 1237.

The court further stated: "[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order to be termed a spontaneous exclamation." Id. at 219-220, 7 O.O. 3d at 383, 373 N.E. 2d at 1237.

Related to the notion of a wide discretion in appellate review is a clear judicial trend to liberalize the requirements for an excited utterance when applied to young children victimized by sexual assaults. See, e.g., State, ex rel. Harris, v. Schmidt (1975), 69 Wis. 2d 668, 230 N.W. 2d 890, and the cases cited therein; Fretwell v. State (Tex. Crim. App. 1969), 442 S.W. 2d 393; Soto v. Territory (1908), 12 Ariz. 36, 94 P. 1104; Beausoliel v. United States (C.A.D.C. 1939), 107 F. 2d 292. See, generally, Annotation (1962), 83 A.L.R. 2d 1368. As one author noted, "* * * the judicial trend has been to reject the contemporaneous approach and instead emphasize the spontaneous nature of the exclamation."[5]

Having enunciated the principles of wide discretion, the uniqueness of the circumstances involved in discussing utterances of young victims of sexual abuse, and the necessity of a case-by-case analysis, we turn now to the facts of the case sub judice.

The evidence disclosed the sexual attack upon William Priest occurred on his third birthday; he had been alive for only three full years. His powers of speech were at the initial stages of development. In response to his mother's persistent questioning, William attempted to describe the attack. His description related the oral nature of the acts; he was simply unable to verbalize the act of a penis being inserted into his rectum. Later, using the anatomically correct dolls, William was able to express himself outside the boundaries of his limited three-year-old vocabulary.

William's nascent powers of speech and limited ability to syntactically organize and communicate his knowledge resulted in his mother's failing to understand the extent of the assault upon him. By communicating with the dolls, William was finally able to make himself understood. His recounting of the event remained intact; the evidence he related did not waiver from the first time he communicated it to his mother; however, its meaning remained latent until a common medium of communication between relater and

---

[4] Evid. R. 803 states in part:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

[5] Note, State v. Duncan: The Relationship Between Abusive Sexual Acts and the Admissibility of Spontaneous Exclamations (1979), 6 Ohio N. U. L. Rev. 498, 499.

communicant could be discovered, *viz.,* the anatomically correct dolls.

The significance and trustworthiness of an excited utterance lies in the fact the words are uttered "while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." 6 Wigmore on Evidence (Chadbourn Rev. 1976) 202-203, Section 1750. The limited reflective powers of a three-year-old, coupled with his inability to understand the enormity or ramifications of the attack upon him, sustain the trustworthiness of his communications. As a three-year-old, truly in the age of innocence, he lacked the motive or reflective capacities to prevaricate the circumstances of the attack. Furthermore, the immediacy of each communication, considered in light of the available opportunities to express himself, satisfies the requirement of spontaneity.

Thus, all the communications of William Priest relating to the sexual acts performed upon him satisfy the requirements of excited utterances and were properly admitted under this exception to the prohibition against hearsay.

Appellant's second assignment of error states as follows:

"The defendant's constitutional right to confrontation was denied by the trial court's admission of the hearsay of William Priest."

This argument is rejected.

In *Ohio* v. *Roberts* (1980), 448 U.S. 56, the United States Supreme Court summarized the interplay between hearsay testimony and the Confrontation Clause as follows:

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' *Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."* (Emphasis added.) *Id.* at 66.

In the case *sub judice,* the hearsay statements of William Priest fall within the excited utterance exception to the hearsay rule. Appellant places much emphasis on his lack of opportunity to cross-examine William. In *United States* v. *Nick* (C.A. 9, 1979), 604 F. 2d 1199, the court stated at 1202-1203:

"Whatever implications to the contrary might have been drawn from *California* v. *Green,* the Supreme Court in *Dutton* v. *Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d 213 (1970) made plain that the availability of cross-examination was not the sole criterion by which to test the admissibility of hearsay over confrontation clause objection. *In this context, the essential confrontation clause issue is whether the admissible hearsay, under all of the circumstances, has a very high degree of reliability and trustworthiness and there is a demonstrated need for the evidence. The availability of cross-examination is simply one of the means by which the quality of reliability is tested."* (Emphasis added.)

Appellant has put forward no serious problems concerning the reliability of William Priest's statements to his mother and the detective. The fact the statements to the mother, the detective and the examining doctor are consistent is a clear indicium of their reliability; so, too, is the childhood terminology initially employed by William. The corroborating physical evidence of the trauma of his anal area demonstrates the existence of sexual abuse. Finally, appellant had the opportunity to commit the crime and there is no reason to conclude William was mistaken in the identification of the man he already knew. "The interests of justice were served by admitting the declaration of this child, who was the victim of sexual assault, and far too young to appreciate the im-

plications of that assault." *United States v. Nick, supra,* at 1204. Under these circumstances, appellant's objections to the hearsay testimony of William Priest on the grounds of the Confrontation Clause are rejected.

*Judgment affirmed.*

PARRINO, C.J., and CORRIGAN, J., concur.