Defendant-appellant, James Ashcraft, appeals a judgment of the Butler County Court of Common Pleas sentencing him for two counts of gross sexual imposition and one count of rape after a jury found him guilty. We affirm.
In May 1996, Vicki Dawson and her husband, Joe Dawson, entered into a baby-sitting arrangement with appellant. Pursuant to this arrangement, appellant watched Victoria Mills, Vicki Dawson's daughter, and Theresa Eversole, Vicki Dawson's niece, while the Dawsons were at work. In exchange, appellant was offered $25 per week. However, the record is unclear as to whether appellant actually accepted or received any compensation.
From May 1996 to November 1996, Mills and Eversole spent an occasional weekend evening at appellant's home. In addition, appellant bought clothes, bicycles, and bunk beds for the girls, with Vicki Dawson's prior approval.
In late November 1996, while Mills was taking a bath, Vicki Dawson noticed a mark on Mills' right breast that resembled a "hickey." Vicki Dawson questioned Mills about how the mark got there and Mills responded that she did not know. After Mills finished taking her bath, she went downstairs and told her mother that appellant put the mark on her breast and that on one or two occasions appellant placed his penis in her "cat," Mills' word for vagina. The Dawsons then terminated the baby-sitting arrangement with appellant.
On December 18, 1997, Cindy Hayes, a Butler County Community Services Board social worker, received a report of sexual abuse regarding Mills. On December 23, 1997, Hayes interviewed Mills at the Dawsons' home. After the meeting, Hayes filed a police report alleging that appellant sexually abused Mills and referred Mills to Childrens Hospital in Cincinnati, Ohio for a medical examination.
On January 15, 1997, Mills went to Childrens Hospital and met with Elizabeth Mathison, a social worker, and with Dr. Katherine Gouldin, a pediatrician. Mathison noted on Mills' medical record, according to Vicki Dawson, that Mills was involved in a sexually abusive incident with a David Combs when Mills was three years old. Dr. Gouldin performed a genital exam and found a notch on Mills' hymen and asymmetry of her hymen area, meaning that there is not the same amount of tissue on both sides of the genital area.
On April 16, 1997, appellant was indicted by the grand jury on two counts of gross sexual imposition, R.C. 2907.05(A)(4), and two counts of rape, R.C. 2907.02(A)(1)(b).
On September 29, 1997, appellant made a motion to introduce Mills' medical record in its entirety or exclude it in its entirety. The trial court held an in camera hearing and found that at most there might have been a past attempt of sexual abuse, but even then Mills was never touched nor was Mills aware of what had occurred. Therefore, the trial court allowed the medical record into evidence, but redacted all references to prior sexual abuse.
At trial, over appellant's objection, Vicki Dawson testified about the conversation in which Mills told Dawson that appellant sexually abused her. Appellant argued that Dawson's testimony was hearsay. The trial court ruled that Mills was in an excited state when she made the statement to her mother and allowed the testimony.
The jury found appellant guilty as indicated above. Appellant was sentenced to four years for each of the two gross sexual imposition convictions and seven years for the rape conviction, all sentences to be served concurrently. Following the sentencing, the trial court conducted a hearing pursuant to R.C. 2950 et seq. and found appellant to be a sexual predator.
Appellant filed a timely appeal and asserts the following assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION IN LIMINE TO PROHIBIT REDACTION OF PART OF THE MEDICAL RECORD, INTRODUCED AS STATE'S EXHIBIT 8.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION IN LIMINE TO PROHIBIT THE INTRODUCTION OF STATE'S EXHIBIT 8.
Assignment of Error No. 3:
 THE COURT ERRED IN FINDING THE HEARSAY STATEMENT MADE BY VICTORIA MILLS TO VICKI DAWSON, CONSTITUTED AN EXCITED UTTERANCE, HEARSAY EXCEPTION.
In his first assignment of error, appellant argues that state's exhibit No. 8, Mills' medical record, which makes a reference to prior sexual abuse, should have been admitted in its entirety or not at all. Appellant claims that the reference to prior sexual abuse meets Ohio's rape shield disease exception and is necessary to show Mills' source of sexual knowledge. Therefore, appellant maintains that the trial court improperly redacted the prior sexual abuse portion of Mills' medical record. We disagree.
Ohio's rape shield statute, R.C. 2907.02(D), is intended to guard the victim's sexual privacy, to protect her from undue harassment, and to discourage the tendency in rape cases to put the victim on trial. State v. Gardner (1979), 59 Ohio St.2d 14,17. The relevant part of R.C. 2907.02(D) states:
 Evidence of specific instances of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory prejudicial nature does not outweigh its probative value[.]
R.C. 2907.02(D) exceptions are very limited. The defendant is required to show that the victim's past sexual reputation or activity is necessary to prove the origin of semen, pregnancy, disease or past sexual history with defendant. Even then, the court may exclude such evidence if the court finds that it is irrelevant or is prejudicial.
The trial court is within its sound discretion to determine the relevancy of the evidence that the defendant seeks to enter in a rape prosecution and to determine the manner in which the rape shield law is to be applied. State v. Guthrie (1983),86 Ohio App.3d 465,467. Therefore, the appellant must show that the trial court abused its discretion when it excluded evidence of the alleged prior sexual abuse. Abuse of discretion means more than an error of law or of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
The trial court did recognize the disease exception to Ohio's rape shield statute. However, appellant did not proffer any competent medical evidence to support his assertion that asymmetry of the hymen and/or the notch on the hymen may be the result of a disease. Nor did appellant offer any medical evidence to support his allegation that the alleged prior sexual abuse could have caused asymmetry of Mills' hymen and/or a notch on Mills' hymen. Since appellant failed to lay the proper foundation, such evidence was properly excluded. See State v. Whisonant (Sept. 12, 1986), Trumbull App. No. 3596, unreported, at 6.
Further, the trial court did recognize that Ohio does permit devidence that would otherwise be excluded under the rape shield statute for the limited purpose of showing the child-victim's sexual knowledge. State v. Ungerer (June 5, 1996), Ashland App. No. 95COA1125, unreported, at 12-13. However, the trial court is within its discretion to determine the relevancy of such evidence as it applies to Ohio's rape shield statute. State v. Miller (June 30, 1989), Warren App. No. CA88-09-071, unreported, at 6-7.
Before opening statements, the trial court held an in camera hearing to determine whether Mills was sexually abused by Combs. The trial court questioned Vicki Dawson about the alleged sexual abuse as follows:
 MR. MOELLER [prosecutor]: Okay, Vicki, I believe that your daughter, Victoria, when she was about two or three, was involved in some kind of an incident with a David Combs. Is that correct?
MRS. DAWSON: Yes it is.
 MR. MOELLER: Okay. Would you tell the judge a little bit about the incident, what you saw yourself?
 MRS. DAWSON: I was at a friend's house and I walked into the bathroom and I caught David Combs — * * * I caught David Combs getting ready to put his hands down Victoria's pants. I got her out of the bathroom. I took her home. * * *
 THE COURT: * * * what exactly did you observe in the incident in the bathroom?
 MRS. DAWSON: I had opened the bathroom door and he was pulling her shirt up to put his hands inside her pants.
 THE COURT: Okay. Did you ever see his hands inside her pants?
MRS. DAWSON: No.
 THE COURT: Okay. Did you ever see him, other that what he was getting ready to do, did he touch any of her sexual areas: Her breasts or her vaginal area?
 MRS. DAWSON: Not that I had seen. All I seen was her shirt go up as he was getting ready to go.
 THE COURT: Okay. Did you ask her if she had been touched by him?
MRS. DAWSON: Yes.
THE COURT: What did she say?
MRS. DAWSON: She said he was getting ready to.
 THE COURT: Okay. But did she ever say that he touched her inappropriately?
MRS. DAWSON: Besides her shirt going up, no.
 THE COURT: Okay. I'm talking here specifically him fingering her in her vaginal area. Do you know what I'm talking about?
MRS. DAWSON: Yes. As far as I know, no.
 THE COURT: Okay. So there was never any sexual —
MRS. DAWSON: Not that I'm aware of.
 THE COURT: Okay. Now did she ever — now is that the only other incident of sexual abuse that you are aware of that your daughter has been involved with?
 MRS. DAWSON: Yes, except for this one we're here for.
In addition, the court questioned Mills about whether she was touched by Combs or anyone else in her private areas. Mills responded negatively and told the court that she did not even recall the Combs incident. The trial court refused to allow evidence regarding a prior sexual abuse allegation when there was no evidence of any prior physical contact between Combs and Mills. Further, the trial court found that even if this alleged prior sexual act had occurred, there was no evidence that it would have produced the type of injury that Mills received.
Based on the in camera hearing testimony, we find that the trial court's ruling to preclude evidence about the allegation that Mills was sexually abused by Combs was not arbitrary, unreasonable, or unconscionable. Therefore, the trial court properly redacted any reference to the alleged sexual abuse by Combs from Mills' medical record. Appellant's first assignment of error is overruled.
In appellant's second assignment of error, he argues that if part of Mills' medical record was redacted, the entire record should have been excluded because it is irrelevant and highly prejudicial. We disagree.
Evid.R. 401 defines relevant evidence as:
 [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
However, relevant evidence is subject to the balancing test of Evid.R. 403. Evid.R. 403 excludes evidence if its probative value is substantially outweighed by unfair prejudice, confusion of issues, or misleading the jury.
A reviewing court will not overrule a lower court's decision to exclude evidence offered at trial unless the trial court's decision is arbitrary, unreasonable or unconscionable. Adams,59 Ohio St.2d at 157. Therefore, it was within the trial court's sound discretion to determine whether state's exhibit No. 8, Mills' medical record, was relevant, and if relevant, too prejudicial. State v. Sage (1987), 31 Ohio St.3d 173, 180.
Appellant argued to exclude Mills' medical record since the physical findings were summarized as "frequently noted in sexually abused children and * * * consistent with, but not conclusive of sexual abuse." Appellant claimed that such evidence was irrelevant and prejudicial since it was possible that Mills' injury could be the result of something other than sexual abuse.
The medical condition of the victim's genital area is relevant evidence that helps support or refute the allegation that a rape occurred. Further, appellant had an opportunity to cross-examine Dr. Gouldin, the examining physician, scrutinize Mills' medical record, and call his own experts to testify concerning Dr. Gouldin's medical findings. Therefore, the trial court's decision that Mills' redacted medical record was relevant and not highly prejudicial was not arbitrary, unreasonable, or unconscionable. Appellant's second assignment of error is overruled.
In his third assignment of error, appellant asserts that portions of Vicki Dawson's testimony should have been excluded as hearsay and that the trial court erred when it concluded that the excited utterance exception applied. We disagree.
Evid.R. 803(2) allows certain hearsay statements to be introduced at trial as "excited utterances" if certain conditions are met. State v. Hancock (Dec. 5, 1997), Erie App. No. E-96-016, unreported, at 3-4, citing State v. Wallace (1988), 37 Ohio St.3d 87,89. First, there must be a startling event that produces a nervous excitement in the declarant which stills reflective capabilities. Id. Second, if the statement is not made contemporaneously with the startling event, then the statement must have been made while declarant was still in a nervous state without the opportunity to reflect on the startling event. Id. Third, the statement must be related to the startling event. Id. Finally, the declarant must have the opportunity to personally observe the matters asserted in the statement. Id.
The trial court should liberally apply the excited utterance exception when the declarant is a child-victim. State v. Wagner (1986), 30 Ohio App.3d 261, 263. Further, when the crime is rape, determining whether the victim is in an excited state is a factual question that is left to the trial court's discretion. State v. Smith (1986), 34 Ohio App.3d 180, 190. A reviewing court should give the trial court wide discretion when the trial court decides that statements made by a child-victim about sexually abusive acts qualify as excited utterances. Wagner,30 Ohio App. 3d at 263.
The only element that is in dispute is whether Mills was in an excited state when she made the statements to her mother. One approach to this issue is to look at the amount of time that lapsed between the event and the statements. However, when the victim is a child, the time period under which Evid.R. 803(2) applies is longer than it is for adults. State v. Humphries (1992), 79 Ohio App.3d 589, 598. Children are likely to remain in a state of nervous excitement longer than adults would and are less capable of reflective thought. State v. Taylor (1993),66 Ohio St.3d 295, 304 (emphasis added). However, the time element under excited utterance is not a controlling factor in rape cases. State v. Smith (1986), 34 Ohio App.3d 180, 190. Rather, the controlling factor is whether the declarant made the statement under "circumstances that would reasonably show that it resulted from impulse rather than reason and reflection." Id.
In the present case, the declarant is a nine-year-old child-victim who told her mother that appellant sexually abused her. The record is unclear as to exactly when the abuse occurred. Mills testified that at some time around Halloween and before Thanksgiving, appellant touched her breasts, put his penis inside her "cat," and put his fingers on top of her "cat." Mills testified that all of these events occurred on two or three separate occasions. There was testimony from Dawson that Mills appeared to be upset, scared, and about to cry when Mills made the statements.
Unfortunately, this court cannot discern from the record the exact time and date of the sexual abuse. However, based upon her mother's testimony that Mills appeared nervous and scared when she made the statements, it is not unreasonable, arbitrary, or unconscionable to believe that these events transpired shortly before she made the statements to her mother.
The other element to consider is whether Mills had sufficient time after the sexual abuse to think about it before making the statements to her mother. Appellant asserts that Mills did have time to think about it because her first response to Dawson's question about the origin of the "hickey" was that she did not know how it had occurred. However, a declarant's initial response to a parent's questions does not destroy the declarant's excited state so long as such questions do not coerce, lead, produce reflective thought, or destroy the nervous excitement. State v. Wallace (1988), 37 Ohio St.3d 87, 92-93. Further, rape is a psychological trauma that may leave the victim in an excited state for hours or days. Smith, 94 Ohio App.3d at 190. This trauma may cause the victim to remain silent. Id. In addition, the shame that a child may feel as a result of the sexual abuse may make the child reluctant to disclose the crime until prompted.
Dawson testified that Mills appeared scared. When Dawson asked Mills why she had not told Dawson sooner about what appellant did to her, Mills replied that she was afraid. It is not unreasonable that a nine-year-old child would be afraid to tell her mother that a friend who she trusted sexually abused her. Further, the age of Mills is significant since a child-victim, even at the age of nine, would find it difficult to express herself in sexual terms.
Therefore, based upon Ohio's policy to liberally construe the time period for excited utterances when young children are involved; the short amount of time that transpired between Dawson's question and Mills' statements; Mills' age; and the evidence that Mills was nervous and scared when she made the statements; we believe that the trial court correctly concluded that Mills did not have time to reflect about the incident with appellant. Therefore, the trial court's decision to categorize Mills' statements as excited utterances and allow Vicki Dawson to testify about them was not an abuse of discretion. Appellant's third assignment is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.