[Cite as *State v. Thompson*, 2012-Ohio-6054.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24432 |
| vs. | : | T.C. CASE NO. 2010-CR-1374 |
| ANTWAN Y. THOMPSON | : | (Criminal Appeal from the Common Pleas Court) |
| Defendant-Appellant | : | |

· · · · · · · · ·

**O P I N I O N**

Rendered on the 21st day of December, 2012.

· · · · · · · · ·

Mathias H. Heck, Jr., Prosecuting Attorney, by Kirsten A. Brandt, Assistant Prosecuting Attorney, Atty. Reg. No. 0070162, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422,
    Attorney for Plaintiff-Appellee

Thomas H. Hahn, Atty. Reg. No. 0086858, P.O. Box 341688, Beavercreek, Ohio 45432
    Attorney for Defendant-Appellant

· · · · · · · · ·

GRADY, P.J.:

{¶ 1}  Defendant Antwan Thompson appeals from his convictions for three counts of gross sexual imposition involving a child under the age of thirteen, R.C. 2907.05(A)(4), felonies of the third degree.

{¶ 2}  In early 2010, A.J. lived with her seven-year-old daughter M.J.  A.J.'s boyfriend introduced her to Defendant, who was his friend.  Defendant visited A.J.'s home several times and befriended M.J.  On the evening of April 23, 2010, Defendant watched television with M.J. in M.J.'s bedroom.  A.J. checked on her daughter a couple of times. A.J. saw M.J. lying on her bed while Defendant was on the floor.

{¶ 3}  M.J. later explained that Defendant asked her to lie on the floor with him. When she ignored him, Defendant pulled her down by her nightgown and laid her on top of him.  Defendant started moving around, rubbing M.J.'s back, legs, and buttocks, under her clothing.  Defendant took M.J.'s hand and placed it on his penis, which was covered by his clothing.

{¶ 4}  A.J. came back to check on M.J. and saw what Defendant was doing to her daughter.  A.J. saw that Defendant's jeans were unzipped and that he had an erection.  A.J. began to yell at Defendant, who jumped up, grabbed his jacket, and ran out the front door. A.J. called the police the next morning.  Two days later, A.J. saw Defendant at the library and called the police, who brought Defendant in for questioning.  Detective Rotterman advised Defendant of his rights, which Defendant waived.

{¶ 5}  Defendant explained that he had been lying on the floor with M.J. on top of him.  His jeans were unzipped because the zipper was broken.  During the course of the interview, Defendant admitted that he touched M.J.'s back and buttocks under her clothing,

which gave him an erection. Defendant also admitted that M.J.'s hand had been on his penis, on the outside of his underwear.

{¶ 6} Defendant was indicted on three counts of gross sexual imposition involving a child under the age of thirteen. Three days prior to trial, the court conducted a hearing to determine the competency of the seven-year-old victim, after which the court found M.J. competent to testify.

{¶ 7} At trial, Defendant testified that while he was watching television with M.J., she jumped on him. As he grabbed M.J.'s waist to remove her, A.J. walked into the room and started yelling at him, telling him to leave. Defendant admitted that he left and never made any effort to give A.J. an explanation for what she had seen. Defendant denied rubbing M.J.'s back or buttocks. He also denied that she touched his penis or that he had an erection. He admitted his zipper was open, but claimed it was broken. The jury found Defendant guilty of all three charges and the trial court sentenced him to one year in prison.

{¶ 8} Defendant appealed. His appellate counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 19 L.Ed.2d 493 (1967), stating that he could find no potentially meritorious issues for appellate review. We conducted the independent review of the record required by *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), and found one issue with arguable merit. *State v. Thompson,* 2d Dist. Montgomery No. 24432, 2012-Ohio-2416. Therefore, we appointed new counsel to represent Defendant.

{¶ 9} In his appellate brief, Defendant raises two assignments of error. He first claims that the trial court erred in allowing M.J. to testify without conducting a recorded competency hearing. The State filed a motion to supplement the record with a transcript of

the competency hearing, which we granted. Defendant has since notified us that the State provided him with an audiovisual recording of the competency hearing, which caused him to withdraw his first assignment of error. Accordingly, we need only consider Defendant's second assignment of error.

{¶ 10} Defendant's second assignment of error:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 11} Defendant claims that trial counsel was ineffective both for failing to object to A.J.'s testimony regarding the subject matter of her daughter's nightmares and for failing to present evidence to prove that Defendant's zipper was broken.

{¶ 12} Counsel's performance will not be deemed ineffective unless that performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice to the defendant arises from counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. *Id. State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 13} The State called the victim's mother as a witness. During cross-examination, A.J. acknowledged that her daughter had been in counseling since shortly after the incident. (Tr. 178). On re-direct, the State asked A.J. if she knew whether M.J. had been having nightmares, and, if so, what those nightmares were about. A.J. responded, "She says she be dreaming about snakes and different things. And she be having a hard time – " (Tr. 180). At

this point, defense counsel objected, insisting that A.J. should not be allowed to testify as to the specifics of the nightmares because it was hearsay. (Tr. 181).

**{¶ 14}** The trial court pointed out that Defendant had opened the door regarding M.J.'s counseling, but that the testimony had not been sufficiently developed to rule on the admissibility of any pictures created by M.J. during her counseling sessions. Therefore, the court sustained Defendant's objection, but advised the State that it could re-phrase the questions. (Tr. 181).

**{¶ 15}** The prosecutor resumed questioning A.J., and without further objection, the following colloquy took place:

Q. Ma'am, your daughter is currently in counseling?

A. Yes.

Q. Have you seen any photographs regarding or pictures that your daughter has shown you with regards to or relating to these nightmares?

A. Yes, when she went to counseling, they had her draw.

Q. Okay. And what's depicted in these photos that you've seen?

A. It's snakes. (Tr. 182-183).

**{¶ 16}** Defendant claims that testimony was evidence of A.J.'s nonverbal conduct constituting hearsay, offered to prove that M.J. was having nightmares about snakes, which was prejudicial to his defense due to the stereotypical connection between images of snakes and sexual conduct of a disturbing nature. Therefore, he concludes that trial counsel was deficient in failing to continue to object to this line of questioning.

{¶ 17} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A statement includes "nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A)(2). A person's nonverbal conduct, such as the drawing of a picture, is a hearsay statement if it is intended by the person as an assertion that is offered to prove the truth of the matter concerned. *Thompson* at ¶ 7, citing Evid.R. 801(A)(2) and 801(C).

{¶ 18} We believe that under some circumstances, a child's drawings made during counseling sessions could be intended as hearsay statements within the meaning of Evid.R. 801(A)(2) and 801(C). Such drawings could be compared to a child's use of dolls to demonstrate sexual abuse, which has been held to constitute nonverbal conduct intended as an assertion, warranting an analysis under Evid.R. 801(A)(2). *State v. Wagner,* 30 Ohio App.3d 261, 262, 508 N.E.2d 164 (8th Dist.1986).

{¶ 19} Here, we know only that M.J. drew pictures of snakes during a counseling session. "The Ohio Supreme Court has stated that 'an assertion for hearsay purposes simply means to say that something is so, e.g., that an event happened or that a condition existed.'" *State v. Fawcett,* 3d Dist. Seneca No. 13-99-14, 2001 WL 276631, * 3 (Mar. 14, 2001), quoting *State v. Carter,* 72 Ohio St.3d 545, 549, 651 N.E.2d 965 (1995).

{¶ 20} As the trial court noted, the issues regarding M.J.'s drawings were never fully developed. Moreover, no evidence was offered, nor was any argument made, that M.J.'s pictures tended to prove that she was sexually assaulted by Defendant.

{¶ 21} Even assuming, arguendo, that trial counsel should have again objected to A.J.'s testimony regarding her daughter's drawings, it is possible that trial counsel's decision not to renew his objection was the result of a sound trial strategy. In determining whether counsel's performance has fallen below an objective standard of reasonable representation, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, supra, at 689. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *Id.* at 690; *State v. Cook,* 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 22} Because the challenged testimony occurred immediately after an objection and a sidebar, counsel may have been concerned that repeated objections could antagonize the jury. Additionally, a renewed objection could have had the unintended consequence of emphasizing to the jury that M.J. was experiencing nightmares and undergoing counseling, which may have done more harm to Defendant than potential good. Under the circumstances, we conclude that trial counsel could have made the reasonable strategic decision not to object further to A.J.'s testimony regarding her daughter's drawings.

{¶ 23} Defendant also claims that trial counsel should have offered into evidence the jeans that he was wearing on the night in question, in order to prove that the zipper was broken, as he told Detective Rotterman and as he testified at trial. However, the record is completely devoid of any evidence that the jeans were available to trial counsel and had not been thrown away or repaired, or that the zipper was actually broken.

{¶ 24} Additionally, even if Defendant's zipper was broken, it does not refute the State's evidence that M.J.'s hand was on Defendant's penis. Both M.J. and her mother testified that M.J.'s hand was outside of Defendant's clothing, and Defendant admitted the same to Detective Rotterman. Therefore, we cannot conclude that trial counsel acted deficiently in opting not to offer Defendant's pants into evidence.

{¶ 25} Defendant's second assignment of error is overruled.

{¶ 26} Defendant's first assignment of error having been withdrawn, and his second assignment of error having been overruled, the judgment of the trial court will be affirmed.

Froelich, J., and Hall, J., concur.

**Copies mailed to:**

**Kirsten A. Brandt, Esq.**
**Thomas H. Hahn, Esq.**
**Hon. Timothy N. O'Connell**