DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Erie County Court of Common Pleas, Juvenile Division, in a delinquency case involving allegations of rape. Because we conclude that the trial court erred in determining the competency to testify of a four-year-old child and the admission of hearsay evidence, we reverse.
 {¶ 2} Appellant, Joshua C., age 13, was charged with delinquency on the basis of rape. Appellant allegedly placed his mouth on the vagina of his four-year-old cousin, Adriana, while she and her mother were visiting one afternoon at his home. The following information was presented at the adjudicatory hearing.
 {¶ 3} While the adults visited, Joshua and Adriana spent several hours playing video games in Joshua's bedroom. Adriana's mother checked in on them periodically. Over appellant's objections, mother was permitted to testify as to Adriana's statements made to her in the car on the way home. Adriana said to her mother that Joshua had allegedly "licked" her "privacies." Following this disclosure, however, mother stated that she did not take Adriana to be examined by a doctor or for psychological counseling.
 {¶ 4} The court then conducted a voir dire of Adriana and, over appellant's objection, determined that she was competent to testify. Adriana testified as to the alleged actions of Joshua, as well as a former babysitter, Savannah, and "another person." At the conclusion of the hearing, the court determined that all the elements of rape had been proven beyond a reasonable doubt and found appellant to be delinquent on that basis.
 {¶ 5} Appellant now appeals that judgment, setting forth the following three assignments of error:
 {¶ 6} "Assignment of Error #1: That [sic] the trial court abused its discretion when it found the four-year old witness competent to testify.
 {¶ 7} "Assignment of Error #2: That [sic] the trial court's finding of delinquency against appellant by reason of having committed the offense of rape was against the manifest weight of the evidence.
 {¶ 8} "Assignment of Error #3: That [sic] the trial court erred in admitting hearsay statements as excited utterances."
 I. {¶ 9} We will first address appellant's third assignment of error, in which he argues that the trial court erred in admitting, as an excited utterance, testimony of Adriana's mother regarding Adrian's statements made to her regarding appellant's alleged actions.
 {¶ 10} Evid.R. 803(2) provides that the following statement will not be excluded as hearsay, even though the declarant is available as a witness:
 {¶ 11} "(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. * * *" The admission of a statement as an excited utterance under Evid.R. 803(2) is generally within the sound discretion of the trial court. State v. Duncan (1978),53 Ohio St.2d 215, 219; State v. Smith (1986), 34 Ohio App.3d 180,190-191. An appellate court will not reverse the trial court's decision absent an abuse of discretion. See State v. Brown (1996),112 Ohio App.3d 583, 601; State v. Fowler (1985), 27 Ohio App.3d 149,152.
 {¶ 12} For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while still under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. State v. Taylor
(1993), 66 Ohio St.3d 295, 300-301; Duncan, supra, paragraph one of the syllabus, approving and following Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus.
 {¶ 13} Additionally, when deciding whether a statement qualifies as an excited utterance, consideration will be given to such factors as "(1) the lapse of time between the event and the declaration; (2) the mental and physical condition of the declarant; (3) the nature of the statement; and (4) the influence of intervening circumstances." See Staff Note to Evid.R. 803(2);State v. Humphries (1992), 79 Ohio App.3d 589,598. We are mindful that the test for an excited utterance is often applied liberally to out-of-court statements made by child declarants who are alleged to have been sexually assaulted. State v. Shoop (1993),87 Ohio App.3d 462, 472. See also, Taylor, supra at 304. The rationale for doing so is based on the recognition that a young child's limited reflective powers make it more likely that a given statement is trustworthy. Taylor, supra, at 304; State v. Wagner (1986),30 Ohio App.3d 261, 264.
 {¶ 14} Nevertheless, merely being upset does not meet the standard for admissibility as an excited utterance. Taylor, supra, at 303. Time is also not the main consideration. Humphries, supra. The "controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." Id.
 {¶ 15} In this case, Adriana's mother stated that the child did not seem much different than normal. Mother stated that Adriana was perhaps a little quieter, but she attributed that to the effects of fighting over wearing a seat belt. Adriana never cried or appeared upset. While Adriana may have been affected by the events of the day, there is little if any evidence that she was ever in or remained in a state of "nervous excitement" caused by alleged sexual abuse. In addition to the lapse in time before Adriana related the alleged abuse, she chatted with her mother for awhile before saying that she had something to tell her. Adriana also indicated that she feared that her aunt and Joshua might be angry with her. Rather than being a spontaneous, under-the-stress-of-the-moment statement, Adriana's statements and the surrounding facts indicate reason and reflection by Adriana. Even under a liberal application of the rule, in our view, the statement simply did not meet the minimum requirements for admissibility as an excited utterance. To rule otherwise, every statement made by a child after an alleged sexual abuse incident would qualify as an excited utterance. Therefore, we conclude that the trial court abused its discretion in permitting the mother to testify as to Adriana's out-of-court statements.
 {¶ 16} Accordingly, appellant's third assignment of error is well-taken.
 II. {¶ 17} Appellant, in his first assignment of error, contends that the trial court erred in determining that Adriana was competent to testify. We agree.
 {¶ 18} "Competency under Evid.R. 601(A) contemplates several characteristics. See State v. Frazier (1991), 61 Ohio St.3d 247, 251, certiorari denied (1992), 503 U.S. 941. Those characteristics can be broken down into three elements. First, the individual must have the ability to receive accurate impressions of fact. Second, the individual must be able to accurately recollect those impressions. Third, the individual must be able to relate those impressions truthfully. See, generally, 2 Wigmore on Evidence (Chadbourn Rev. 1979) 712-713, Section 506." State v. Said (1994), 71 Ohio St.3d 473, 476.
 {¶ 19} In determining whether a child under ten is competent to testify, "the trial court must take into consideration: (1) the child's ability to receive accurate impressions of fact or observe acts about which she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what was observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of her responsibility to be truthful." Frazier,
supra at 251. The determination of competency is within the trial judge's sound discretion. Id. Absent a showing of an abuse of discretion, a reviewing court will not disturb the trial court's ruling. State v.Hogan (June 8, 1995), Cuyahoga App. No. 66956.
 {¶ 20} In this case, the trial court found Adriana to be competent. We include the following excerpts from her testimony as examples of her general inability to focus and confusion about events. However, first we must note that the 82 page transcript is riddled with "(inaudible)" portions. From page 27 to the end of the transcript, we have counted at least 137 "inaudibles," occurring not only during the child's testimony, but also when the court and attorneys speak. Inaudible portions of a transcript directly affect our ability to make an effective and meaningful review of the evidence presented. We admonish the Erie County Court of Common Pleas, Juvenile Division, to either improve its recording system or to provide for a live court reporter in order to protect due process rights to review.
 {¶ 21} "[Adriana]: And you know what?
 {¶ 22} "[Attorney]: What?
 {¶ 23} "[Adriana]: Donald has done some bad things. Donald has been locking me in the room and making me take a nap when I didn't want to take a nap and then (inaudible) wouldn't let me get out of the room.
 {¶ 24} "[Attorney]: Who is Donald?
 {¶ 25} "[Adriana]: Donald (inaudible).
 {¶ 26} "[Attorney]: How do you know him?
 {¶ 27} "[Adriana]: Because the last time he came over to, I mean, Karen and I saw him. And he told me his name was Donald, so I'm getting to know him.
 {¶ 28} "[Attorney]: Donald ever (inaudible) do anything else?
 {¶ 29} "[Adriana]: That's it, he didn't do nothing else. Then it happened again.
 {¶ 30} "[Attorney]: (inaudible)? Who is Savannah?
 {¶ 31} "[Adriana]: Got to tell you something else (whispering)
 {¶ 32} "[Attorney]: Well, you have to tell that judge that.
 {¶ 33} "[Adriana]: (whispering) (inaudible).
 {¶ 34} "THE COURT: Do you know who Savannah is?
 {¶ 35} "[Adriana]: Well, she used to baby-sit us. I guess she don't baby-sit, but she has a mom named Crystal.
 {¶ 36} "THE COURT: Is she a friend of yours?
 {¶ 37} "[Adriana]: She has a dog named (Timmon-inaudible). He loves me, I mean, he's very (inaudible). He keeps chasing me around and I run and he goes arf, arf, and runs. I think he really likes me, the dog.[1]
 {¶ 38} "[Attorney]: Is Savannah a little girl, too, or is she older?
 {¶ 39} "[Adriana]: She's a little girl.
 {¶ 40} "* * *
 {¶ 41} "[Attorney]: We need to talk a little more about Savannah.
 {¶ 42} "[Adriana]: Yes. Savannah did — she did bad things to me, but I did not like it, but that — but that — you know, you know, who look (inaudible) in a real courtroom when the police stand by right there and one side of the police stands right there one side the police stands right there, well, there is only one person there but he's not standing by the wall.
 {¶ 43} "[Attorney]: Did you tell anyone what Savannah did to you?
 {¶ 44} "[Adriana]: I didn't tell my mom. But I should tell her about it, but I didn't. Have you got a dress on?
 {¶ 45} "[Attorney]: No just a long coat. Did anybody else tell (inaudible)?
 {¶ 46} "[Adriana]: No.
 {¶ 47} "[Attorney]: No?
 {¶ 48} "[Adriana]: Hey, you got panty legs on, too.
 {¶ 49} "[Attorney]: Yes, I do.
 {¶ 50} "[Adriana]: She's got some on. I got some on, some (inaudible). Do you wear panty legs?
 {¶ 51} "THE COURT: No, I don't.
 {¶ 52} "[Adriana]: I do, because boys don't wear panty legs.
 {¶ 53} "THE COURT: Right, not usually.
 {¶ 54} "[Adriana]: Are you looking pretty today?
 {¶ 55} "THE COURT: Am I pretty today?
 {¶ 56} "[Adriana]: Yea, are you looking pretty today?
 {¶ 57} "THE COURT: I always look pretty, don't I"
 {¶ 58} "[Adriana]: Can I see your pants so I can (inaudible).
 {¶ 59} "THE COURT: I have gray pants on today.
 {¶ 60} "[Adriana]: Yes, I do see that.
 {¶ 61} "THE COURT: See that, I do have clothes under here.
 {¶ 62} "[Adriana]: Well, look at that.
 {¶ 63} "THE COURT: Now Adriana, you have to listen very carefully to the questions that Allison is asking, Okay?
 {¶ 64} "[Adriana]: Okay.
 {¶ 65} "THE COURT: All right.
 {¶ 66} "[Adriana]: Can I (inaudible) for a minute and then come back in.
 {¶ 67} "* * *
 {¶ 68} "[Attorney]: Adriana, we need to talk a little bit more about what did Savannah do what you said she did?
 {¶ 69} "THE COURT: You have to be very brave. We have to talk about this.
 {¶ 70} "[Adriana]: I'm already brave.
 {¶ 71} "THE COURT: Yes, you sure are.
 {¶ 72} "[Adriana]: I'm high up. Please don't tell me we're going to fall off and go boom.
 {¶ 73} "THE COURT: There is no chance of that happening and it's not —
 {¶ 74} "[Adriana]: We're on the ground, ain't we?
 {¶ 75} "THE COURT: We're connected right to the ground, yes.
 {¶ 76} "[Adriana]: Are we on the ground?
 {¶ 77} "THE COURT: Uh-huh. Now, Adriana, we need to talk a little bit more about —
 {¶ 78} "[Adriana]: About Savannah.
 {¶ 79} "THE COURT: You said that she did the same thing that Josh did to you; is that correct?
 {¶ 80} "[Adriana]: Yes, that's correct. Why do you have that book up there, you see (inaudible).
 {¶ 81} "THE COURT: Sometimes I have to read and I have to answer questions and the answers are in those books, okay?
 {¶ 82} "[Adriana]: Okay.
 {¶ 83} "THE COURT: Now, Adriana, you need to may attention very closely.
 {¶ 84} "[Adriana]: I am.
 {¶ 85} "THE COURT: Now Savannah —
 {¶ 86} "[Adriana]: The only one I'm going to pay attention to is her and her.
 {¶ 87} "THE COURT: Okay. Now Savannah did the same thing that Josh did to you?
 {¶ 88} "[Adriana]: Yes.
 {¶ 89} "THE COURT: Okay.
 {¶ 90} "[Attorney]: When did she do that, how long ago?
 {¶ 91} "[Adriana]: Long, long.
 {¶ 92} "[Attorney]: (inaudible)?
 {¶ 93} "[Adriana]: No.
 {¶ 94} "[Attorney]: (inaudible)?
 {¶ 95} "[Adriana]: Uhm, will you hold on a second, I want to stay up here. What's that microphone for?
 {¶ 96} "[Attorney]: It's recording everything that goes on in the courtroom, that way if the Judge has a question about what someone says, he can come back and listen to it.
 {¶ 97} "[Adriana]: Can you just talk in that thing?
 {¶ 98} "[Attorney]: Uh-huh. It takes down what I say and you say and everyone else.
 {¶ 99} "[Adriana]: I'm not going to talk in that thing.
 {¶ 100} "[Attorney]: You don't have to, you're doing just find right there. Now (inaudible) —
 {¶ 101} "[Adriana]: You know how people blow into a microphone and it goes loud?
 {¶ 102} "[Attorney]: (inaudible).
 {¶ 103} "[Adriana]: No.
 {¶ 104} "[Attorney]: (inaudible) privates about?
 {¶ 105} "[Adriana]: No.
 {¶ 106} "[Attorney]: (inaudible)?
 {¶ 107} "[Adriana]: One time it did a lot. Could I tell him something?
 {¶ 108} "[Attorney]: When we're done, okay we're almost done.
 {¶ 109} "[Adriana]: Okay.
 {¶ 110} "[Attorney]: how many times did something bad happen with Josh?
 {¶ 111} "[Adriana]: Two, just two.
 {¶ 112} "[Attorney]: Two times?
 {¶ 113} "[Adriana]: And I know the days of the week.
 {¶ 114} "[Attorney]: You know when it happened? There are seven days a week, that's right.
 {¶ 115} "[Adriana]: We sing this song in school. We have as a (inaudible) Monday, Tuesday, Wednesday, Thursday, Saturday, Sunday.
 {¶ 116} "THE COURT: Okay.
 {¶ 117} "[Attorney]: Pretty close. (inaudible)?
 {¶ 118} "[Adriana]: Wait till Christmas? It happened (inaudible).
 {¶ 119} "[Attorney]: Did you tell anyone about?
 {¶ 120} "[Adriana]: You know, what (inaudible) kept doing on the moving and moving and I got dizzy, but he wouldn't even stop the chair.
 {¶ 121} "[Attorney]: (inaudible) of?
 {¶ 122} "[Adriana]: No, that's not.
 {¶ 123} "THE COURT: Adriana you have to pay close attention now and I know you don't want to talk about Savannah and about Josh, but we have to, okay?
 {¶ 124} "[Adriana]: And I will.
 {¶ 125} "THE COURT: Well, we have to, okay? And as soon as you can talk about them we can get you out of here, okay?
 {¶ 126} "[Adriana]: (inaudible)
 {¶ 127} "THE COURT: Yes. So pay close attention to what Allison is asking you, okay, and answer it so we can move along, okay, can you do that for me?
 {¶ 128} "[Adriana]: I'm going to pay attention to Allison.
 {¶ 129} "THE COURT: Okay.
 {¶ 130} "[Adriana]: You know what, do you remember — I don't want to keep talking about what I already said.
 {¶ 131} "[Attorney]: Right, but you said —
 {¶ 132} "[Adriana]: I'm just doing to pay attention to you guys.
 {¶ 133} "THE COURT: Let Allison ask you a question, okay?
 {¶ 134} "[Attorney]: Did you tell your mom that Josh did that twice or did you tell her it happened once.
 {¶ 135} "[Adriana]: It happened once.
 {¶ 136} "[Attorney]: Uh-huh.
 {¶ 137} "[Adriana]: I don't know why everybody gets to wear those things on their bones because it hurts there bones.
 {¶ 138} "* * *
 {¶ 139} "THE COURT: Lets not talk about other things, okay? Let's talk about the questions that Allison asks you, okay?"
 {¶ 140} "[Adriana]: Okay.
 {¶ 141} "[Attorney]: How long ago did (inaudible)?
 {¶ 142} "[Adriana]: Uhm, this, well, it happened, too. You know when Savannah did it, that was one. And then when Josh did it, then it was two.
 {¶ 143} "[Attorney]: Did Savannah do it before Josh?
 {¶ 144} "[Adriana]: Josh did it first. Well, Savannah did it twice and (inaudible) do it and I keep hurting my body.
 {¶ 145} "[Attorney]: (inaudible).
 {¶ 146} "THE COURT: Did Savannah and Josh do this to you at the same time when you were over at Josh's house"
 {¶ 147} "[Adriana]: He did it and then someone else did it.
 {¶ 148} "[Attorney]: Who else did it?
 {¶ 149} "[Adriana]: I don't know why people get to (inaudible) Christmas (inaudible) in here.
 {¶ 150} "THE COURT: Okay, Adriana, you said that Savannah licked your privacies, correct?
 {¶ 151} "[Adriana]: So did Josh.
 {¶ 152} "THE COURT: And so did Josh.
 {¶ 153} "[Adriana]: That's correct. That's really correct.
 {¶ 154} "THE COURT: Did that happen at the same time or did it happen at different times?
 {¶ 155} "[Adriana]: (inaudible) Same times.
 {¶ 156} "THE COURT: The same time when you were over at Josh's house?
 {¶ 157} "[Adriana]: Yes. He was licked my privacy and then Savannah did it. But then, then, uhm, can I think a little bit?
 {¶ 158} "THE COURT: Uh-huh.
 {¶ 159} "[Adriana]: Well, but Savannah didn't come over to Josh's house.
 {¶ 160} "THE COURT: Okay, well, how did they do it at the same time if Savannah didn't come over to Josh's?
 {¶ 161} "[Adriana]: Well, I was at Savannah's and then I went to Josh's house and did it.
 {¶ 162} "THE COURT: Was that all the same day or was it different days?
 {¶ 163} "[Adriana]: Different days.
 {¶ 164} "THE COURT: Now different days, which day came first, when Savannah did it or when Joshua did it?
 {¶ 165} "[Adriana]: Savannah did it. Josh did it (inaudible). She licked my privacies. And then the day that Josh did it, that was the day he (inaudible).
 {¶ 166} "THE COURT: Was that the same day or were they different days?
 {¶ 167} "[Adriana]: Same day.
 {¶ 168} "THE COURT: Same days?
 {¶ 169} "[Adriana]: Yes, just (inaudible) same days (inaudible).
 {¶ 170} "* * * *."
 {¶ 171} When the court questioned Adriana during the competency voir dire, she sometimes answered directly. More often, however, her answers were either non-responsive or totally unconnected to the subject matter of the question being asked. While Adriana's answers to some questions may have, on the surface, shown some level of understanding of the importance of her telling the truth, her inability to remain focused on the matters being discussed indicated that she had difficulty recalling and communicating her impressions. When asked a question, Adrianna might answer but would then be unable to follow the thought through on the next question. More often than not, she answered a question by asking a question or making a comment which was totally unrelated to the court's questions. The court would then have to re-focus her, often going through a long drawn-out conversation before finally getting back to the original question asked.
 {¶ 172} In addition, when questioned as to whether she knew the difference between a truth and a lie, she said, "I usually tell lies, but I don't tell most of the time." She then responded to further questions and indicated that telling a lie was "a bad thing" and that she might be in trouble if she told a lie. However, later in her testimony, she reiterated that, "I said I, well, I usually said I usually don't tell lies and I usually tell lies." Still later, Adriana states that sometimes she gets punished by her mother when she tells a lie, but it is "a pretend that your punishing in the chair and you sit down in the chair and stay there until your mother tells you to get up." Finally, when trying to determine when and who had allegedly perpetrated any type of inappropriate touching, Adriana's answers bounce back and forth between whether Savannah did it first or Joshua, or some other individual, whether the events occurred together, and whether the events occurred on the same or different days. Indeed, it appears that the court requestioned Adriana until it got the answer it was looking for.
 {¶ 173} The court, in determining that Adrianna was competent to testify, stated that "she "presented herself today, a four-year-old child. Judging her level of competence in relation to her age, I do find that she has an ability to record accurate impressions, the ability to recollect those impressions. "(Emphasis added.) The court again stated, when finding appellant delinquent, that it found Adriana to be a "normal four-year-old child. * * * I was, basically, impressed with her ability,given the age of four, to recall events, to make observations, to relate those observations, and also her ability to understand the importance of being truthful to this court." The court went on to conclude that, despite her confusion about other people who had allegedly done the same thing to her, it believed the act had occurred with Joshua.
 {¶ 174} While we agree that Adriana's responses and impressions were typical for a four-year-old, this level does not meet the required threshold for competency. Indeed, a child of two may respond typically and be able to make statements which are understandable and appropriate for his age, and yet not meet the requirements for competency. In our view, the standard is whether a child can relate those impressions and communicate consistently and accurately, per the criteria as set forth inFrazier, supra. In the present case, after reviewing the entire transcript, we conclude that the evidence does not support a finding of competency. Therefore, we conclude that the trial court erred in finding that Adriana was competent to testify.
 {¶ 175} Accordingly, appellant's first assignment of error is well-taken.
 III. {¶ 176} In his second assignment of error, appellant argues that the finding of delinquency was against the manifest weight of the evidence. Since we have determined that the testimony regarding the alleged act was inadmissible, and no other evidence, physical or otherwise was presented, we conclude that the finding of delinquency was against the manifest weight of the evidence, as well as insufficient as to all the elements of the crime charged.
 {¶ 177} Accordingly, appellant's second assignment of error is well-taken.
 {¶ 178} The judgment of the Erie County Court of Common Pleas, Juvenile Division, is reversed. Court costs of this appeal are assessed to appellee.
Judgment Reversed.
Richard W. Knepper, J., Mark L. Pietrykowski, J. and Arlene Singer,J., Concur.
[1] In the transcript, this was ascribed to "THE COURT" but was obviously a statement made by Adriana.