OPINION
{¶ 1} Defendant-appellant, James Hazlett, appeals the judgment of the Logan County Court of Common Pleas. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} On August 3, 2005, Hazlett went to the Logan County Sheriff's Office at the request of Detective Mike Brugler. Detective Brugler and Detective Jon Stout interviewed Hazlett regarding an allegation that Hazlett inappropriately touched one of his granddaughters. At the time of the interview, Hazlett was a United Methodist pastor. During the interview, Hazlett confessed to one incident of inappropriately touching his granddaughter.
 {¶ 3} On September 13, 2005, Hazlett was indicted for one count of gross sexual imposition, a violation of R.C. 2907.05(A)(4) and a felony in the third degree. Thereafter, Hazlett filed a motion to suppress statements that he made during the August 3, 2005 interview. The trial court denied the motion. Prior to trial, Hazlett made an oral motion to revisit the motion to suppress. The trial court reviewed the recording of the interview for a second time. The trial court then denied the motion.
 {¶ 4} A jury trial was held on January 12 and 13, 2006, and the jury found Hazlett guilty. The trial court sentenced Hazlett to one year imprisonment.
 {¶ 5} It is from this judgment that Hazlett appeals and sets forth five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT. [TR., 43-44]
 {¶ 6} In his first assignment of error, Hazlett argues that the trial court should have granted his motion to suppress the statements he made during his interview with law enforcement officers. As a basis for this argument, Hazlett maintains that he requested an attorney during the interview and that law enforcement officers inappropriately pressured him to waive his right to counsel. Hazlett further argues that the trial court should have suppressed the interview due to threats and promises made by the law enforcement officers during the interview.
 {¶ 7} The review of a motion to suppress involves mixed questions of law and fact. State v. Burnside (2003), 100 Ohio St.3d 152, 154-55,797 N.E.2d 71. When reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." Id., citation omitted. However, appellate courts review questions of law de novo. State v. McNamara (1997),124 Ohio App.3d 706, 710, 707 N.E.2d 539, citation omitted.
 {¶ 8} The accused must unequivocally request an attorney in order to invoke their right to an attorney. Davis v. United States, 512 U.S. 452,462, 114 S.Ct. 2350, 129 L.Ed.2d 362. "If the statement is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, the cessation of questioning is not required." State v. Hennes (1997), 79 Ohio St.3d 53, 63, 679 N.E.2d 686
citing Davis, 512 U.S. 452, 459. The Ohio Supreme Court has held that the statement "I think I need an attorney" was not an unequivocal request for an attorney. Id.
 {¶ 9} On August 3, 2005, Hazlett voluntarily went to the sheriff's office to discuss the accusations. At the beginning of the interview, Hazlett signed a Miranda waiver. The following discussion then took place during the interview:
 MR. HAZLETT: I guess I need an attorney, huh?
 DETECTIVE BRUGLER: Well, you know, that's up to you. You know, I'll say this. If it's got to go that way, this is going to — this is going to get out, I mean, that we are investigating you for this. I mean, it's got to get out. You work with kids.
 Mr. HAZLETT: Well, am I being charged or what?
 DETECTIVE BRUGLER: What do you think? DETECTIVE STOUT: Yeah, you're going to be charged. * * *
 {¶ 10} Hazlett questioned whether he should obtain an attorney. A reasonable officer, under these circumstances, would have understood only that Hazlett might be invoking his right to an attorney, not that Hazlett had unequivocally and unambiguously invoked his right. Hazlett also acknowledged, at the end of the interview, that he had not made a request for an attorney. Therefore, we hold that Hazlett did not invoke his right to an attorney.
 {¶ 11} Although the officer commented briefly about the investigation being made public, the officer reiterated that the decision of whether Hazlett wanted to contact an attorney was his decision to make. Therefore, we further hold that the law enforcement officers did not improperly attempt to discourage Hazlett from exercising his right to an attorney.
 {¶ 12} Hazlett maintains that the law enforcement officers used a variety of threats to get him to confess including threats to publicize the offense, threats to terminate his contact with his granddaughter, and threats to deprive him of favorable treatment with the court. Hazlett further maintains that the officers used inducements such as implying that if he confessed then the matter would be closed, that they could prevent him from looking bad in the public, and that he would get help if he confessed.
 {¶ 13} When the admissibility of a defendant's confession has been challenged, the prosecution bears the burden of proving by a preponderance of the evidence that the confession was voluntary.State v. Melchior (1978), 56 Ohio St.2d 15, 25, citing Lego v.Twomey (1971), 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.E.2d 618. In determining whether a defendant's confession was voluntary, a court " `should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' " State v. Brown, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, at ¶ 13, quoting State v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus, vacated as to death penalty (1978),438 U.S. 911, 98 S.Ct. 3147, 57 L.E.2d 1155. A reviewing court must determine whether the totality of the circumstances surrounding the confession indicates that a defendant's "will was overborne and his capacity for self determination was critically impaired because of coercive police conduct." State v. Otte (1996), 74 Ohio St.3d 555, 562,660 N.E.2d 711, citing Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515, 93 L.Ed.2d 473; State v. Dailey (1990), 53 Ohio St.3d 88,559 N.E.2d 459, paragraph two of the syllabus.
 {¶ 14} At the time of the interview, Hazlett was 58 years old and was a United Methodist pastor. Hazlett voluntarily went to the sheriffs department to discuss the allegations and the officers advised him of his Miranda rights. The interview was conducted by two officers and lasted approximately 30 minutes long. The record does not reveal any physical deprivation or physical coercion.
 {¶ 15} During the interview, the officers made references to Hazlett's employment as a pastor, to his position in the community, and about publicizing the offense. The officers also made comments about Hazlett not being able to see his granddaughter until the matter gets resolved, about the officers wanting to get the matter settled, to helping the defendant to get help, and to the benefits to his granddaughter if he confessed. However, given that Hazlett voluntarily went to the sheriff's office, and that Hazlett signed a Miranda warning, considering that the interview lasted only half an hour long and there is no indication in the record that the officers engaged in any physical deprivation or coercision, we cannot say that Hazlett's will to resist was overborne. Accordingly, we hold that, upon the totality of the circumstances, Hazlett's statements during the interview were voluntary.
 {¶ 16} Hazlett's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED WHEN IT FAILED TO REDACT THE RECORDING OF THE APPELLANT'S INCULPATORY STATEMENT.
 {¶ 17} Hazlett maintains that the trial court erred when it admitted and played the unredacted recording of his interview with law enforcement officers. Specifically, Hazlett argues the recording should have been redacted because it contained allegations that Hazlett had committed other sexual offenses with the victim and with his other granddaughter, references to the victim's truthfulness, and references to Hazlett's lack of truthfulness.
 {¶ 18} Hazlett objected to the playing of the interview, but did not object on the same basis that he is now asserting in this assignment of error. Accordingly, this court reviews the evidence under a plain error standard. See, State v. Hairston (Oct.18, 2001), 10th Dist. No. 01AP-299, at * 3, citing State v. Robertson (1993), 90 Ohio App.3d 715,728.
 {¶ 19} In order for plain error to apply, there must be a deviation from a legal rule, the error must be an obvious defect in the trial, and the error must affect a substantial right. State v. Barnes,94 Ohio St.3d 21, 27, 759 N.E.2d 1240, 2002-Ohio-68. Under the plain error standard, an appellant must demonstrate that the outcome of his trial would clearly have been different but for the errors that he alleges.State v. Waddell (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, citingState v. Moreland (1990), 50 Ohio St.3d 58, 63, 552 N.E.2d 894.
 {¶ 20} Even if the CD had been redacted to exclude the portions of the testimony that Hazlett now finds objectionable, a redacted copy of the CD containing Hazlett's confession to inappropriately touching his granddaughter would have been played for the jury. Consequently, Hazlett has been unable to demonstrate that the outcome of his trial clearly would have been different but for the trial court admitting the unredacted CD as is required under the plain error standard.
 {¶ 21} Hazlett's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT ERRED WHEN IT ADMITTED THE STATEMENT OF [K.H.] TO HER MOTHER. TR., 124.
 {¶ 22} In his third assignment of error, Hazlett asserts that the trial court erred when it permitted K.H.'s mother to testify to hearsay statements that did not constitute an excited utterance. Hazlett further argues that the mother's testimony regarding the victim's prior consistent statement was inadmissible and the admission of that statement constituted prejudicial error.
 {¶ 23} Evid. R. 803 states in pertinent part:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 * * *
 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 * * *
 {¶ 24} The Ohio Supreme Court has established the following test regarding excited utterances:
 " `Such testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.' "
State v. Taylor (1993), 66 Ohio St.3d 295, 300-301, 612 N.E. 2d 316, citations omitted.
 {¶ 25} This court has held that the excited utterance test is liberally applied to out-of-court statements made by a child who is an alleged victim of sexual abuse. State v. Shoop (1993),87 Ohio App.3d 462, 472, 622 N.E.2d 665, citing State v. Wagner (1986),30 Ohio App.3d 261, 30 OBR 458, 508 N.E.2d 164; State v. Muttart, 3d Dist. No. 5-05-08,2006-Ohio-2506, at ¶ 46. In that situation, "[t]he focus is whether the excitement of the incident was still dominant over the child declarant's thought processes and whether the child's statements were the unreflective expressions of her belief." Shoop, 87 Ohio App.3d at 472, citing State v. Fox (1990), 66 Ohio App.3d 481, 489, 585 N.E.2d 561,565.
 {¶ 26} In State v. Muttart, 2006-Ohio-2506, at ¶ 48, this court upheld the finding that a child declarant's statements were admissible as an excited utterance. Immediately before disclosing the sexual abuse, the child-declarant was curled up on a couch, she was crying, she had difficulty swallowing, and she was tapping her teeth. Id. at ¶ 47. Further, the child disclosed the sexual abuse through the use of an imaginary friend. Id.
 {¶ 27} Conversely, a child declarant's statements have been found inadmissible under the excited utterance exception when the child's mother testified that the child "did not seem much different from normal," the child chatted with her mother before telling what happened, and indicated that she was afraid that her aunt and the defendant would be angry with her. In Re Joshua C., 6th Dist. No. E-03-015,2003-Ohio-6752, at ¶ 15.
 {¶ 28} In the case under review here, Patty Hazlett, K.H.'s mother, testified that K.H. came home on Sunday afternoon after visiting her grandparents. Patty testified to the following:
 Q. Okay. Did she appear to, or did she say something to you kind of out of the blue? A. Completely.
 * * *
 Q. Well, I mean, did she seem to be tense about it, upset about it?
 A. I honestly, I didn't know where it was going when it started. So I was in shock that I honestly don't know. Q. Okay. Okay But she had been home just two hours? A. Couple of hours.
 Q. And you had prompted her with no questions? A. No.
 * * *
 Q. Did your daughter seem different to you at all when she came home?
 A. Honestly, I have three children. And we were all just doing our normal thing. I wasn't looking for anything different.
 Q. Okay. Did she seem eager to — did she seem eager to provide this information to you?
 A. Definitely.
 Q. And was that in and of itself out of the ordinary for her?
 A. Well, nothing like this has ever happened before, so. But she does — she does talk to me a lot.
 Q. Did she seem upset about what had happened?
 A. I think she was confused more than anything at that point.
 Q. Okay. And that confused state was different for her than normal?
 A. Yes.
 * * *
 Q. What did she initially say to you about the situation?
 A. Well, when we were getting ready, she said she missed
 Papa. And that they had slept in the nursery together. And I said alone? She said yeah. And I said, Okay. She said —
 THE COURT: Keep your voice up.
 Sorry. She said he put his hand in my underwear.
 MR. TRIPLETT: I'm going to object and move to strike, Your Honor.
 THE COURT: Overruled.
 Q. Has that — did she appear, to you, upset about it when she told you?
 A. A little. I asked her how that happened. She said, I don't know. He was rubbing my belly, and then he put his hand in my underwear.
 Q. You've had to talk with K.H. about this quite a bit as a result of this trial, haven't you?
 A. Recently.
 Q. Has her story as to what happened ever changed?
 A. No.
 {¶ 29} Unlike the child in Muttart, there is no evidence that the child in the present case appeared upset or was crying. In her testimony, Patty merely indicated that K.H. appeared to be "confused" about what had occurred. K.H.'s confusion indicates that K.H. had been reflecting on the events. Under the facts and circumstances of this case, we find the child declarant was no longer under the stress of the events when she made the statements to her mother. Accordingly, we hold that the trial court erred when it determined that the excited utterance exception applied.
 {¶ 30} This court, however, must determine whether the admission of the statements constituted harmless error.
 {¶ 31} Criminal Rule 52(A) states, "Harmless error. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." A trial court's judgment will not be reversed when the error involved was harmless. State v. Brown (1992), 65 Ohio St.3d 483,486, 605 N.E.2d 46. "To say that an error did not affect a substantial right is generally to say that the error was not prejudicial, meaning that it must not have affected the outcome of the proceedings."State v. Neal, 2d Dist. Nos. 2000-CA-16, 2000-CA-18, 2002-Ohio-6786, at ¶ 77, citation omitted. "[T]he evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admissions of those statements was harmless beyond a reasonable doubt." State v. Kidder
(1987), 32 Ohio St.3d 279, 284, 513 N.E.2d 311, citations omitted.
 {¶ 32} In addition to the mother's hearsay testimony, the prosecution presented the testimony of Patti Rayburn, Detective Mike Brugler, and K.H..
 {¶ 33} Patti Rayburn, an intake investigator for Delaware County Job and Family Services, testified that she had interviewed K.H., but did not testify regarding any information from the actual interview itself The prosecution also presented the testimony of Detective Mike Brugler, a detective who investigated Hazlett. Brugler testified that he had interviewed Hazlett, and the prosecution played the recording of that interview for the jury. Detective Brugler also testified that the Sheriff conducted a search of the defendant's home and confiscated the computer but did not find any child pornography on it; that there were two other children living in Hazlett's household; that the children continued to live in the household; and that no problems were found with respect to the other children. K.H., the victim, testified that Hazlett had inappropriately touched her.
 {¶ 34} In sum, the evidence in favor of conviction, other than the mother's testimony, consisted primarily of the child-victim's brief testimony[1] and the taped confession. The record does not contain any physical evidence of sexual abuse. The record also contains Hazlett's testimony denying that he had inappropriately touched his granddaughter.
 {¶ 35} Accordingly, this case essentially turns on whether Hazlett or K.H. is found to be more credible. The determination of credibility is a matter primarily for the jury. See State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Because this case essentially revolves on an issue of credibility, we cannot say that the admission of Patty's Hazlett's hearsay testimony was harmless beyond a reasonable doubt.
 {¶ 36} Since we have held that the trial court erred in admitting Patty Hazlett's testimony under the excited utterance exception, we need not address Hazlett's argument that Patty Hazlett's testimony did not constitute a prior consistent statement under Evid. R. 806.
 {¶ 37} Hazlett's third assignment of error is, therefore, sustained.
 ASSIGNMENT OF ERROR NO. IV THE CUMULATIVE PREJUDICE RESULTING FROM ALL OF THE ERRORS IN THE TRIAL COURT DEPRIVED THE APPELLANT OF A FAIR TRIAL.
 ASSIGNMENT OF ERROR NO. V THE TRIAL COURT ERRED WHEN IT IMPOSED A SENTENCE OF IMPRISONMENT. 2/21/06, TR., 9.
 {¶ 38} Hazlett's fourth and fifth assignments of error have been rendered moot by our disposition of Hazlett's other assignments of error.
 {¶ 39} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 BRYANT, P.J. and ROGERS, J., concur.
[1] A child under ten years of age who appears "incapable of receiving just impressions of the facts and transactions respecting why they are examined, or of relating them truly" is incompetent to testify. Evid. R. 601(A). K.H., the victim, was six years old when she testified at the trial. Although the record before us does not contain a specific finding that K.H. was competent to testify, from the evidence in the record it appears as though a competency hearing was held and the issue has not been raised by the defendant.