[Cite as *State v. Wallace*, 2011-Ohio-1728.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 14-10-20

      v.

JOHN THURSTON WALLACE, III,          O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 09-CR-0135

Judgment Affirmed

Date of Decision: April 11, 2011

APPEARANCES:

    *Terry K. Sherman and David J. Graeff* for Appellant

    *David J. Phillips* for Appellee

**PRESTON, J.**

{**¶1**} Defendant-appellant, John Thurston Wallace, III (hereinafter "Wallace"), appeals the Union County Court of Common Pleas' judgment of conviction and sentence. We affirm.

{**¶2**} On August 25, 2009, the Union County Grand Jury indicted Wallace on three counts, including: count one of rape in violation of R.C. 2907.02(A)(1)(2), a first degree felony; count two of kidnapping in violation of R.C. 2905.01(A)(4), a first degree felony; and count three of abduction in violation of R.C. 2905.02(A)(2), (B), a second degree felony. (Doc. No. 1).

{**¶3**} On September 4, 2009, Williams appeared for arraignment and entered pleas of not guilty. (Doc. No. 5).

{**¶4**} A jury trial was held June 2-3, 2010, and, on June 4, 2010, the jury returned a guilty verdict on count one but not guilty verdicts on counts two and three. (Doc. Nos. 76-78).

{**¶5**} On July 23, 2010, the trial court sentenced Wallace to seven (7) years imprisonment. (Doc. No. 83).

{**¶6**} On August 18, 2010, Wallace filed a notice of appeal. (Doc. No. 89). Wallace now appeals raising three assignments of error for our review. We elect to address Wallace's assignments of error out of the order that they appear in his brief.

**ASSIGNMENT OF ERROR NO. II**

**WHERE TESTIMONY SHOWS A CONFESSION BY THE ACCUSED ADMITTED DURING TRIAL, WAS COERCED, PLAIN ERROR RESULTS, SINCE THE INVOLUNTARY STATEMENT WAS ADMITTED CONTRA THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.**

**{¶7}** In his second assignment of error, Wallace argues that the trial court committed plain error and violated his due process rights by allowing his coerced and involuntary confession into evidence.

**{¶8}** Wallace failed to file a motion to suppress with the trial court in accordance with Crim.R. 12(C)(3) and (D); and therefore, has waived all but plain error on appeal. Crim.R. 12(H); *State v. Daniels*, 8th Dist. No. 93545, 2010-Ohio-3871, ¶17; *State v. Montgomery*, 5th Dist. No. 2007 CA 95, 2008-Ohio-6077, ¶43; *State v. Taylor*, 9th Dist No. 22882, 2006-Ohio-2041, ¶17. We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum* (1990), 53 Ohio St.3d 107, 110, 559 N.E.2d 710, quoting *State v. Long* (1978) 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Under the plain error

standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, citing *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.

{¶9} In order to determine whether a pretrial statement is involuntary, a court "'should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Brown,* 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶13, quoting *State v. Edwards* (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus.  An appellate court must determine whether the totality of the circumstances surrounding the confession indicates that a defendant's "will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Hazlett*, 3d Dist. No. 8-06-04, 2006-Ohio-6927,  ¶13, quoting *State v. Otte* (1996), 74 Ohio St.3d 555, 562, 660 N.E.2d 711, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473; *State v. Dailey* (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus.

{¶10} Wallace alleges that his confession was coerced because: he was handcuffed during his interview; he was very upset; and law enforcement officers

repeatedly told him that he raped the victim. Since Wallace never filed a motion to suppress, the record before this Court is limited. The limited record demonstrates that Wallace was thirty-nine (39) years old, did not appear to have any mental defects, and had no prior criminal history. The record is not clear concerning the intensity of the interview, but it appears that Wallace was interviewed a total of three times. (June 3, 2010 Tr. at 241, 245). Wallace appears to limit his argument to the first interview that occurred while law enforcement officers were executing a search warrant at his house, and he was detained in handcuffs seated on his couch. (Id. at 221-22, 229, 298-99); (State's Ex. 12). Before Wallace made any statement, however, law enforcement informed Wallace of his *Miranda* rights, and Wallace waived those rights. (Id. at 299); (State's Ex. 12). The record does not demonstrate, nor does Wallace even allege, that law enforcement threatened or induced him to make a statement. Although the total length of the interview is not known, the transcript of the interview is only twenty-one (21) pages long, suggesting a relatively short interview. (State's Ex. 12). Based upon the aforementioned, we cannot conclude that Wallace's "will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *Hazlet*, 2006-Ohio-6927, at ¶13, citations omitted. Furthermore, Wallace has not offered any arguments demonstrating that the outcome of the proceedings would have been different but for the trial court's

Case No. 14-10-20

alleged error, and therefore, has failed to demonstrate plain error. *Waddell*, 75 Ohio St.3d at 166, citing *Moreland*, 50 Ohio St.3d 58.

{¶11} For all these reasons, Wallace's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. III

**WHEN THE PRIMARY PURPOSE OF HEARSAY STATEMENTS OF THE COMPLAINANT ARE ADMITTED FOR INVESTIGATORY PURPOSES, AND THE MEDICAL INDIVIDUAL TESTIFYING IS ACTING AS AN AGENT FOR LAW ENFORCEMENT, PLAIN ERROR OCCURS, SINCE THE HEARSAY TESTIMONY IS CONTRA EVID.R. 803(4), AND THE CONFRONTATION CLAUSE OF THE CONSTITUTION.**

{¶12} In his third assignment of error, Wallace argues that the trial court erred by allowing the victim's hearsay statements to the emergency room nurse, Nicole Murray, into evidence because Murray was acting as law enforcement agent when she advised the victim to report the incident to law enforcement.[1] Wallace also argues that the admission of this testimony violated his Sixth Amendment right of confrontation.

{¶13} As a preliminary matter, we note that appellate counsel conceded at oral argument that there was no Confrontation Clause violation in this case

---

[1] Although counsel for Wallace mentioned the admission of the testimony of several other medical providers at oral argument, counsel for Wallace elected not to argue the admission of their testimony in his assignment of error. We will address the argument as raised in the assignment of error. See, e.g. App.R. 16(A)(3), (7); App.R. 12(A)(2).

because the victim testified at trial subject to cross-examination. We agree. See, e.g., *State v. Turks*, 3d Dist. Nos. 1-10-02, 1-10-26, 2010-Ohio-5944, ¶13, quoting *Crawford v. Washington* (2004), 541 U.S. 36, 59 124 S.Ct. 1354, 158 L.Ed.2d 177, fn. 9 (" * * * when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). See, also, *State v. Bryant*, 12th Dist. No. 2007-02-024, 2008-Ohio-3078, ¶49.

**{¶14}** Next, Wallace argues that Nicole Murray's testimony concerning what the victim conveyed to her in the emergency room was not admissible under Evid.R. 803(4). Specifically, Wallace argues that Nicole Murray acted as an agent for law enforcement officers since she encouraged the victim to report the incident to the police. As such, Wallace argues that the victim's statements were made primarily for a forensic or investigative purpose, not for medical diagnosis and treatment.

**{¶15}** Murray testified, in pertinent part, as follows:

**Q: Can you tell us, please, what was the chief complaint that you noted when [the victim] came in your emergency department that day?**
**A: She stated I've been raped.**
**\* \* \***
**Q: Ma'am, after she came in, you indicated her demeanor, what she looked like. Can you describe that \* \* \***

**A: She was very tearful, crying, she hung her head a little bit.**
**\* \* \***

**Q: \* \* \* did you contact anyone else after [the victim] came in?**
**A: I contacted the victim of crime advocate representative.**
**\* \* \***

**Q: Would you explain to the jury, please, what a victims of crime advocate, why you contact them and what their role is.**
**A: I contacted them because of the patient's chief complaint. Their role is to come in and talk with the patient and discuss any further -- if they need any further help with law enforcement or anything, crisis support, things like that.**
**\* \* \***

**Q: \* \* \* had [the victim] made any complaints of physical -- physical complaints to you that you noted in that chart?**
**A: She did complain of cramping and pain in the vaginal area.**
**Q: Tell us if you would, then, how -- how did you care for her at that point? What was the course that you took?**
**A: At that point I notified Doctor Seifferth of the patient's complaints, and then medication was ordered and administered.**
**\* \* \***

**Q: \* \* \* when [the victim] first came into the emergency room, did you have discussions with her regarding reporting this event to law enforcement?**
**A: I did. I encouraged her to report it.**
**Q: And at that time did you note whether or not she was willing to report this event to law enforcement?**
**A: She was not at that time, but she did want to speak with VOCA.**
**Q: All right. So when she came into the emergency room she was not willing, at least at that point, to contact law enforcement?**
**A: Correct.**
**Q: Tell us, if you would as you recall, did that continue for some period of time?**
**A: It did. I continued until -- well, I went off duty at 6:11, and at that point in time she was still debating whether to contact law enforcement.**

> **Q: So at least by 6:00 the next morning she had not decided what -- whether or not to contact law enforcement during your shift; is that right?**
> **A: Correct.**
> **Q: Ma'am, if you would, did she continue to complain of physical problems while she was under your care?**
> **A: She did. She continued to complain of vaginal pain.**
> **\* \* \***
> **Q: And did you continue to encourage her in any way?**
> **A: I did continue to encourage her to report to law enforcement.**

(Tr. at 108-118).

{¶16} Wallace never objected to Murray's testimony, and therefore, has waived all but plain error on appeal. (June 2, 2010 Tr. at 108-120). See, e.g., *State v. Dickinson*, 3d Dist. No. 11-08-08, 2009-Ohio-2099, ¶27, citing *State v. Wegmann*, 3d Dist. No. 1-06-98, 2008-Ohio-622, ¶106. Furthermore, "decisions regarding the admissibility of evidence are within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion." *State v. Stewart*, 3d Dist. No. 13-08-18, 2009-Ohio-3411, ¶¶79, 97, citations omitted. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

{¶17} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and is generally inadmissible. *State v. Rollison*, 3d Dist. No. 9-09-51,

2010-Ohio-2162, ¶33, quoting Evid.R. 801(c). Evid.R. 803, however, contains an exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid. R. 803(4).

{¶18} Murray's testimony was properly admitted as statements made by the victim for purposes of medical diagnosis or treatment. Evid.R. 803(4). The victim's statement that she had been "raped" to Murray, who was an emergency room nurse, was made for the purposes of medical diagnosis and treatment. *State v. Wade*, 9th Dist. No. 02CA0076-M, 2003-Ohio-2351, ¶6. A victim's statement that she had been raped is relevant for medical diagnosis and treatment, because it directs medical providers to examine the genital areas for physical injury, administer a pregnancy test, and prescribe medications for the prevention of sexually transmitted diseases, to name a few. (See June 2, 2010 Tr. at 155-57). A patient's statements concerning how the alleged rape occurred can be relevant to show the "general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). For example, the victim's statements may guide medical personnel to the particular area(s) of the victim's body to be examined for injury, as well as indicate which areas may need more immediate treatment than others. (June 2, 2010 Tr. at 157-58). *State v.*

*Menton*, 7th Dist. No. 07 MA 70, 2009-Ohio-4640, ¶51 ("* * * the description of how the [sexual] assault took place, over how long of a period, how many times a person was hit, choked or penetrated, and what types of objects were inserted are all specifically relevant to medical treatment. They are part of the medical history. They are the reason for the symptoms. They let the examiner know where to examine and what types of injuries could be latent."). Murray's testimony that the victim stated she had cramping and pain in her vaginal area was properly admitted since it concerned the victim's statements concerning "present symptoms, pain, or sensations." Evid.R. 803(4). Therefore, the trial court did not abuse its discretion by allowing Murray's testimony.

{¶19} Wallace's argument that Murray acted as a law enforcement agent and obtained statements from the victim primarily for forensic purposes lacks merit. Wallace's argument is relevant to whether or not the victim's statements were testimonial for purposes of the Confrontation Clause, but Wallace has already conceded that no Confrontation Clause violation occurred herein. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775. Furthermore, we have already determined that the statements were made for purposes of medical diagnosis or treatment. Finally, Murray was not acting as an agent of law enforcement simply because she encouraged the victim to report the incident to law enforcement. Notably, the victim had not yet decided to contact law

enforcement when Murray obtained the statements. Therefore, we cannot conclude that Murray obtained the statements primarily for forensic purposes when it was unclear whether or not the victim was going to contact law enforcement.

{¶20} Wallace also cites *State v. Dever*, *State v. Muttart*, and *In the matter of Ferrin J. Hopson* for the proposition that the trial court should have examined several factors for determining whether the victim's statement was reliable. (1992), 64 Ohio St.3d 401, 596 N.E.2d 436; 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944; 3d Dist. No. 9-01-54, 2002-Ohio-1293. However, the present case is distinguishable from those cases, because the declarant here is not of tender years like the declarants in those cases. In fact, the Court in *Dever* specifically limited its holding to declarants of tender years. 64 Ohio St.3d at 412. Therefore, Wallace has failed to demonstrate error in the admission of the victim's statements on this basis.

{¶21} Even if we were to find that Murray's testimony was inadmissible hearsay, which we do not find, the error would be harmless. "Any error in the admission of hearsay is generally harmless where the declarant of the hearsay statement is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature." *In the Matter of: M.E.G.*, 10th Dist. Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1263, 06AP-1264, 06AP-1265, 2007-Ohio-

4308, ¶32, citations omitted. Here the victim was present at trial and subject to cross-examination, and the evidence is cumulative in light of the victim's and other medical providers' testimony at trial. (June 2, 2010 Tr. at 108-20, 124-46, 147-78, 194-200, 249-64).

**{¶22}** Finally, Wallace has not offered any arguments demonstrating that the outcome of the proceedings would have been different but for the trial court's alleged error, and therefore, has failed to demonstrate plain error. *Waddell*, 75 Ohio St.3d at 166, citing *Moreland*, 50 Ohio St.3d 58.

**{¶23}** For all these reasons, Wallace's third assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. I

**THE COURT ERRED BY IMPOSING A PRISON SENTENCE GREATER THAN THE STATUTORY MINIMUM WITHOUT THE ESSENTIAL FINDINGS OF FACT ENUMERATED IN O.R.C. 2929.14(B)(1) AND (2).**

**{¶24}** In his first assignment of error, Wallace argues that the trial court erred by imposing a sentence greater than the minimum without making R.C. 2929.14(B)(1)-(2) findings. Specifically, Wallace argues that *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 now requires trial courts to make R.C. 2929.14(B)(1)-2) findings.

**{¶25}** The Ohio Supreme Court has held that R.C. 2929.14(B) was unconstitutional and has excised that provision from R.C. 2929.14 in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶¶61, 83, 97. Following the briefing in this case, the Ohio Supreme Court released *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, which held "that * * * *Oregon v. Ice* does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster*." *Hodge*, 2010-Ohio-6320, at ¶39. Of significance to this case, the Court in *Hodge* specifically noted that "[t]he other stricken provisions [i.e. R.C. 2929.14(B)] are not at issue in this case, and the holdings in *Foster* regarding these provisions were not implicated in *Ice*." Id. at ¶27. Appellant's counsel conceded at oral argument that his argument in support of his first assignment of error was no longer viable in Ohio courts in light of *State v. Hodge*, and, based upon the aforementioned, we agree.

**{¶26}** Wallace's first assignment of error is, therefore, overruled.

**{¶27}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**